1

2  William John Geary, III
   3253 Tarmac Road, Redding CA 96003
3  Cell Phone: (530) 510-5283
   Email:   bill.geary4@gmail.com
4            bill.geary4b@gmail.com
   *Pro Se*





5

6

7

8

9

10                    **UNITED STATES DISTRICT COURT**

11                    **NORTHERN DISTRICT OF CALIFORNIA**

12

13  WILLIAM JOHN GEARY III,                    Case No.: C 19 07322     NC

14                 Plaintiff,

15          v.                                 **COMPLAINT FOR:**

16  PAREXEL INTERNATIONAL               1.  RETALIATION IN VIOLATION OF 18
    CORPORATION, A MASSACHUSETTS            U.S.C. § 1514A (SARBANES-OXLEY)
17  CORPORATION; JOSEF H VON            2.  RETALIATION IN VIOLATION OF 15
    RICKENBACH; MARK A. GOLDBERG;           U.S.C. § 78U- 6 (DODD-FRANK)
18  ROLAND ANDERSSON; INGO BANK;        3.  RETALIATION IN VIOLATION OF
    DOUGLAS A. BATT; XAVIER FLINOIS;        CALIFORNIA LABOR CODE § 1102.5
19  GADI SAARONY; ULF SCHNEIDER;        4.  WRONGFUL TERMINATION IN
    THOMAS SENDERVOVITZ;  DANA             VIOLATION OF PUBLIC POLICY
20  CALLOW; PATRICK J. FORTUNE;
    MAYKIN HO; EDUARD E. HOLDENER;     **JURY TRIAL DEMANDED**
21  CHRISTOPHER J. LINDOP; RICHARD L.
    LOVE; ELLEN M. ZANE
22                 Defendants.

23

24

25

26

27

28

Plaintiff William John Geary III ("Geary" or "Plaintiff") hereby alleges as follows:

### Introduction

1.  On April 8, 2015 Geary reported wire fraud and investor fraud up the corporate hierarchy at PAREXEL International Corporation (NASDAQ: PRXL). Geary reports his observations to the Securities Exchange Commission (SEC) in May 2018. This matter presents the classic case of whistleblower retaliation.

2.  On June 30, 2015 Geary's employment was terminated, after months of personal abuse, precisely because he refused to be complicit in wrongdoing. A company is not allowed to attempt to silence whistleblowers in this manner.

3.  On November 29, 2015 Geary submitted a detailed complaint describing fraud, retaliation, malice, oppression and a pattern of racketeering of PAREXEL to the United States Department of Labor, OSHA Division.

4.  On May 30, 2016, 180 days elapsed without a determination by the Secretary of Labor on the retaliation complaint.

5.  On July 12, 2016, Ingo Bank (PAREXEL, Chief Financial Officer) resigned from his position as Senior Vice President and Chief Financial Officer of PAREXEL, effective July 16, 2016, just three weeks prior to reporting final year-end corporate results.

6.  On August 30, 2016, PAREXEL reports Notification of Late Filing with respect to its Annual Report on Form 10-K for the year ending June 30, 2016 (the "2016 Form 10-K").

7.  On September 9, 2016, the Independent Registered Public Accounting Firm (Ernst & Young LLP) reported "material weaknesses in controls related to revenue recognition at its Clinical Research Services reporting segment and approval of invoices for payment" for the three fiscal years 2014, 2015 and 2016. The findings of Independent Registered Public Accounting Firm (Ernst & Young LLP) are completely consistent with the investor fraud (controls related to revenue recognition) and wire fraud (approval of invoices for payment) Geary reported throughout the corporate hierarchy.

### PARTIES

COMPLAINT - 1

8.      Geary was hired by PAREXEL International Corporation ("Defendant" or "PAREXEL") as a Sr. Project Leader in February 2014.  Geary has been employed in these types of clinical research project leadership roles for more than 20 years. Since the death of his mother from breast cancer when he was 22 years old, Geary's passion and life's work is to bring oncology patients, who are indigent or have no therapeutic options, into clinical trials to receive treatment.

9.      Geary was appointed to the position of Sr. Global Project Leader of  "PCYC Project" in August 2014.

10.     Geary was appointed  to the position of Sr. Global Project Leader of  "GSK Project" in March 2015.

11.     The job description for Sr. Global Project Leader describes that "This position is responsible for the profitability of a project(s)." In Geary's role, Geary calculated and reported accrual of recognized revenue and attested to accuracy.  Additional pass-through expenses are generated by numerous persons within the company, Geary's role required attestation of accuracy of these expenses prior to submitting to a client for reimbursement of these expenses. Geary engaged in Sarbanes-Oxley specified/protected activities on a daily basis and the central issues of Geary's complaint refer to clearly established Sarbanes-Oxley (SOX) specified/protected activities.

12.     Geary was a home-based employee, working from his home in San Jose (Santa Clara County) CA.

13.     PAREXEL  is a one of the largest clinical research services companies in the world, based upon annual service revenue. Headquartered in Waltham, Massachusetts, there are approximately 18,600 employees throughout 52 countries around the world.

14.     Defendant Josef H. von Rickenbach, Chairman of the Board and Chief Executive Officer, was a co-founder of the company.

15.     The Members of the Board of Directors at the time of Geary's employment were Defendants: Mark A. Goldberg, M.D. - President and Chief Operating Officer; Roland

COMPLAINT - 2

Andersson, Ph.D. - Senior Vice President, Clinical Research Services; Ingo Bank - Senior Vice President, Chief Financial Officer;  Douglas A. Batt - Senior Vice President, General Counsel and Secretary; Xavier Flinois - President, PAREXEL Informatics; Gadi Saarony - Senior Vice President, Clinical Research Services; Ulf Schneider, Ph.D. - Senior Vice President and Chief Administrative Officer; Thomas Senderovitz, M.D. - Senior Vice President, Clinical Research Services; A. Dana Callow, Jr. – Director of Company; Patrick J. Fortune, Ph.D. – Director of Company; Maykin Ho, Ph.D. – Director of Company; Eduard E. Holdener, M.D. – Director of Company; Christopher J. Lindop – Director of Company; Richard L. Love – Director of Company; Ellen M. Zane – Director of Company.

## JURISDICTION AND VENUE

16.     This Court has federal subject matter jurisdiction over claims for retaliation in violation of 15 U.S.C. § 1514A and 15 U.S.C. § 78U-6 pursuant to 28 U.S.C. § 1331 because these claims arise under federal law. This Court has supplemental jurisdiction over Geary's remaining claims pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## INTRADISTRICT ASSIGNMENT

18.     Pursuant to Civil Local Rule 3-2(c) and (d), this action should be assigned to the San Jose Division because a substantial part of the events or omissions which give rise to the claims occurred in Santa Clara County.

## GENERAL ALLEGATIONS

### Geary Reports Serious Issues of Revenue Recognition and Client Invoicing

19.     During August 2014, Geary was appointed to "rescue a failing project" (PCYC Project).  PAREXEL was providing clinical research services to Pharmacyclics, Inc. (NASDAQ: PCYC).  Upon assuming leadership of the PCYC Project, Geary reported up the corporate hierarchy that PCYC Project had serious, pre-existing issues of controls related to revenue recognition and client approval of monthly invoices for payment.

20.     The client ("PCYC") had refused to authorize monthly invoices supplied by Geary's immediate supervisor, Joy Yucaitis (Sr. Director, PAREXEL), for the 18 months preceding Geary assuming leadership of the PCYC Project.

21.     PCYC demanded the removal of Joy Yucaitis from PCYC Project in August 2014.

22.     Geary was engaging in activity protected under the Sarbanes-Oxley Act upon his appointment as Senior Global Project Leader.

23.     Geary began receiving pressure and pre-emptive retaliation to influence PCYC to authorize overstated invoices, as soon as he assumed leadership of PCYC Project.

**Geary Identifies, Quantifies and Reports Overstatement of PAREXEL Revenue**

24.     On November 5, 2014, Geary identifies, quantifies and reports, up the corporate hierarchy, errors in PAREXEL's revenue recognition for PCYC Project, due to a lack of internal controls in revenue recognition.

25.     PAREXEL reverses $162K in revenue recognition.  A PAREXEL Finance Director acknowledges understanding of Sarbanes-Oxley compliance issues, stating: "This is going to raise some questions as far as us following SOX requirements."

**Abuse, Threats and Coercion by PAREXEL Hierarchy Intensifies to Commit Wire Fraud**

26.     Beginning in December 2014, Geary began receiving intense abuse, threats and coercion to "use your credibility to influence with PCYC" representatives to gain authorization of overstatement of monthly invoices, occurring since the inception of the PCYC Project.

27.     During one of the numerous intracompany teleconferences between PAREXEL and PCYC, Nadine De Leeuw (PCYC, Inc., Financial Analyst) bluntly expressed her frustration, describing PAREXEL accounting practices as "disturbing."

28.     On January 29, 2015, Joy Yucaitis (Geary's Supervisor) publicly, verbally abused Geary at an off-site business meeting and directed Geary to remove his clothing and wear another man's clothing.

29.     On February 5, 2015 Geary was presented a Performance Improvement Plan (PIP). The central complaint was that Geary had damaged his working relationship with the PAREXEL Finance department. The plan stated: "Specifically, he must make progress in mending fences with finance."

**Geary Pressured to Commit Investor Fraud**

30.     PAREXEL was contracted to provide clinical research services ("GSK Project") to GlaxoSmithKline (NYSE:GSK).

31.     Geary was appointed  to the position of Sr. Global Project Leader of  GSK Project in March 2015.

32.     During March 2015, Geary was contacted by a number of PAREXEL Finance representatives regarding GSK PROJECT.  The communications directed Geary to manufacture accrual and recognize $400K revenue of GSK PROJECT for the month of March, 2015.

33.     GSK PROJECT had been active for less than 30 days, no work had been started, no revenue was accrued. Geary described these facts to the PAREXEL Finance representatives.

34.     Geary was under current threat of having his employment terminated since February 5, 2015 due to complaints by the Finance Department regarding the previously described wire fraud issue. Geary's supervisor made it clear to him during teleconferences, that he was "expected to conform to revenue projections" and authorize the $400K revenue recognition.

35.     Geary refused to fabricate the revenue.

**Geary Reports Wire Fraud and Investor Fraud up the PAREXEL Hierarchy**

36.     On April 8 2015, Geary reported wire fraud and investor fraud through the PAREXEL hierarchy.  Additionally, Geary reported violations of the Physicians Payment Sunshine Act.

37.      It continues to be Geary's reasonable belief, in good faith, that emailing manufactured financial reports to a client to obtain authorization for invoices - is wire fraud.

38.     It continues to be Geary's reasonable belief, in good faith, that manufacturing revenue accrual - is investor fraud.

**PAREXEL Attempts Cover-up and Ultimately Dismisses Geary**

39.     On April 24, 2015 Geary PAREXEL placed Geary on a leave of absence.

40.     Geary reports his observations to the Securities Exchange Commission (SEC) in May 2018.

41.     During the months of May and June 2015, Geary is pressured to sign a Non-Disclosure Agreement.  Geary refused to sign the agreement.

42.     On June 30, 2015 Geary's employment was terminated, precisely because he refused to be complicit in wrongdoing.  A company is not allowed to attempt to silence whistleblowers in this manner.

**Geary Files Whistleblower Retaliation Complaint**

43.     On November 29, 2015 Geary submitted a detailed complaint describing fraud, retaliation, malice, oppression and a pattern of racketeering of PAREXEL to the United States Department of Labor, OSHA Division.

44.     PAREXEL continues to pressure Geary to sign a Non-Disclosure Agreement.

45.     On May 30, 2016, 180 days elapsed without a determination by the Secretary of Labor on the retaliation complaint.

**The Fraud Unravels at PAREXEL**

46.     On July 12, 2016, Ingo Bank (PAREXEL, Chief Financial Officer) resigned from his position as Senior Vice President and Chief Financial Officer of PAREXEL, effective July 16, 2016, just three weeks prior to reporting final year-end corporate results.

47.     On August 30, 2016, PAREXEL reports Notification of Late Filing with respect to its Annual Report on Form 10-K for the year ending June 30, 2016 (the "2016 Form 10-K").

48.     On September 9, 2016, the Independent Registered Public Accounting Firm (Ernst & Young LLP) reported "material weaknesses in controls related to revenue recognition at its Clinical Research Services reporting segment and approval of invoices for payment" for the three fiscal years 2014, 2015 and 2016.  The findings of Independent Registered Public Accounting Firm (Ernst & Young LLP)  are completely consistent with the investor fraud

(controls related to revenue recognition) and wire fraud (approval of invoices for payment) Geary reported throughout the corporate hierarchy.

## FIRST CLAIM

### (RETALIATION IN VIOLATION OF 18 U.S.C. § 1514A (SARBANES-OXLEY)

### (Against all Defendants)

49.     Geary incorporates by reference paragraphs 1 to 48 above, as though fully set forth herein.

50.     Geary was an employee of PAREXEL.

51.     PAREXEL issues and maintains a class of publicly traded securities registered pursuant to Section 12(b) of the Securities Exchange Act of 1934, which are traded on the NASDAQ Stock Exchange during the time period described in this complaint.

52.     Geary engaged in activity protected under 15 U.S.C. § 1514A because he provided information, caused information to be provided, or otherwise assisted in an investigation regarding conduct that he reasonably believed constituted violations of 18 U.S.C. §61341 (mail fraud), § 1343 (wire fraud), § 1344 (bank fraud), § 1348 (securities fraud), any rule or regulation of the SEC, or any provision of federal law relating to fraud against shareholders.

53.     The information and assistance was provided to a Federal regulatory or law enforcement agency - The Securities Exchange Commission (SEC).   Geary had both a subjective and objectively reasonable belief that the conduct being reported violated a listed law, rule, or regulation.

54.     PAREXEL, including its Board of Directors, its CEO, CFO, and others, knew or suspected that Geary engaged in protected activity.

55.     PAREXEL terminated Geary.

56.     Geary's protected activity was a contributing factor—and indeed the reason for—his termination.

57.     As a proximate result of PAREXEL's actions against Geary, as alleged above, Geary has been harmed in that he has suffered the loss of wages, benefits, and additional amounts of

money he would have received if he had not been subjected to said treatment. Geary has also been harmed in that he has suffered humiliation, mental anguish, and emotional and physical distress. As a result of such conduct, Geary has suffered damages in an amount according to proof.

58.     Within 180 days of his termination, Geary filed a complaint with the secretary of labor. The Secretary of Labor has not issued a final decision and more than 180 days have elapsed, and any delay was not due to Geary's bad faith.

## SECOND CLAIM

## (RETALIATION IN VIOLATION OF 15 U.S.C. § 78u-6 (DODD-FRANK))

### (Against all Defendants)

59.     Geary incorporates by reference paragraphs 1 to 58 above, as though fully set forth herein.

60.     Geary was an employee of PAREXEL.

61.     Geary made disclosures that were required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities and Exchange Act of 1934, including 815 U.S.C. section 78j-1 (m), section 1513 (e) of title 18, and other laws, rules, or regulations subject to the jurisdiction of the SEC.

62.     Geary had both a subjectively and objectively reasonable belief that the conduct being reported violated a listed law, rule, or regulation.

63.     PAREXEL, including its Board of Directors, its CEO, CFO, and others, knew or suspected that Geary engaged in such protected activity.

64.     Geary was terminated.

65.     Geary's protected activity discussed above was a contributing factor—and indeed the reason for—his termination.

66.     As a proximate result of PAREXEL's actions against Geary, as alleged above, Geary has been harmed in that he has suffered the loss of wages, benefits, and additional amounts of money he would have received if he had not been subjected to said treatment. Geary has also

COMPLAINT - 8

been harmed in that he has suffered humiliation, mental anguish, and emotional and physical distress. As a result of such conduct, Geary has suffered damages in an amount according to proof.

## THIRD CLAIM

### (WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY)

### (Against PAREXEL)

67.     Geary incorporates by reference paragraphs 1 to 66 above, as though fully set forth herein.

68.     Geary was an employee of PAREXEL.

69.     PAREXEL terminated Geary.

70.     A substantial motivating reason for Geary's termination was his reporting to PAREXEL, its CEO, its CFO, and the Board books-and-records violations of the Sarbanes-Oxley, and related misconduct, as well as refusing to participate in PAREXEL's attempts to turn a blind eye to, and indeed affirmatively cover up, such misconduct.

71.     As a proximate result of PAREXEL's actions against Geary, as alleged above, Geary has been harmed in that he has suffered the loss of wages, benefits, and additional amounts of money he would have received if he had not been subjected to said treatment. Geary has also been harmed in that he has suffered humiliation, mental anguish, and emotional and physical distress. As a result of such conduct, Geary has suffered damages in an amount according to proof. In addition, Geary was terminated for refusing to aid and abed or be an accessory after the fact to criminal violations of the Sarbanes-Oxley Act.

## FOURTH CLAIM

### (WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY)

### (Against all Defendants)

72.     Geary incorporates by reference paragraphs 1 to 71 above, as though fully set forth herein.

73.     Geary was an employee of PAREXEL.

74.    Geary refused to participate in PAREXEL's attempts to turn a blind eye to, and indeed affirmatively cover up Sarbanes-Oxley, and other violations of federal securities laws, and Geary took a position adverse to the employer regarding such illegal activity.

75.    The activities described in Paragraph 74 would result in a violation of federal securities laws, rules, and regulations.

76.    Geary was terminated.

77.    Geary's refusal to participate in the activity described in paragraph 74 was a contributing factor in PAREXEL's decision to terminate him.

78.    As a proximate result of PAREXEL's actions against Geary, as alleged above, Geary has been harmed in that he has suffered the loss of wages, benefits, and additional amounts of money he would have received if he had not been subjected to said treatment.  Geary has also been harmed in that he has suffered humiliation, mental anguish, and emotional and physical distress. As a result of such conduct, Geary has suffered damages in an amount according to proof.

79.    Geary was terminated for refusing to aid and abet or be an accessory after the fact to criminal violations of the Sarbanes-Oxley Act.

### PAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.    Two times the amount of back pay otherwise owed to Geary, with interest at the maximum legal rate;

2.    For any other money judgment representing compensatory damages including lost wages, earnings, retirement benefits and other employee benefits, and all other sums of money, together with interest at the maximum legal rate on these amounts, according to proof;

3.    For a money judgment for mental pain and anguish and emotional distress, according to proof, with interest at the maximum legal rate, according to proof;

4.    For an award of punitive damages, according to proof;

5.    Compensation for litigation costs, expert witness fees, and attorneys' fees;

COMPLAINT - 10

6.     Reinstatement with the same seniority status that the individual would have had, but for the discrimination; and

7.     For such other and further relief as the court deems proper.

Date:  November 4, 2019

/s/

WILLIAM JOHN GEARY III

*Pro Se* Plaintiff

COMPLAINT -  11