UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM JOHN GEARY,<br><br>    Plaintiff,<br><br>v.<br><br>PAREXEL INTERNATIONAL CORPORATION, et al.,<br><br>    Defendants. | Case No.   5:19-cv-07322-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 122 |

Plaintiff William John Geary III, proceeding pro se, brings this action against Defendant Parexel International Corporation ("Parexel") and its individual officers, executives, and directors (collectively, "the Individual Defendants"), asserting the following claims: (1) retaliation in violation of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), 18 U.S.C. § 1514A against all Defendants; (2) retaliation in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 15 U.S.C. § 78u-6 against all Defendants; (3) retaliation through wrongful termination in violation of California Labor Code § 1102.5 against Parexel[1]; and (4) wrongful termination in violation of public policy against all Defendants. Compl., Dkt. No. 1. Defendants now move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and (6). Defs.' Not. of Mot. and Mot. to Dismiss Plf.'s Compl. Pursuant to F.R.C.P. 12(b)(1) and

---

[1] In the text of the Complaint, Geary lists both the third and fourth claim as "wrongful termination in violation of public policy," but on the caption of the Complaint, he describes his third claim as retaliation under California Labor Code § 1102.5 and the fourth claim as wrongful termination in violation of public policy.

Case No.: 5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
1

F.R.C.P. 12(b)(6) ("Mot."), Dkt. No. 122.  The Court finds the motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b).  Having considered the parties' written submissions, the Court GRANTS the motion with leave to amend.

## I.   BACKGROUND

Parexel is a clinical research service company headquartered in Waltham, Massachusetts, with approximately 18,600 employees across 52 countries.  Compl. ¶ 13.  The Individual Defendants consist of: Parexel co-founder, Chairman of the Board of Directors, and Chief Executive Officer Josef H. von Rickenbach; President, Chief Operating Officer, and Director Mark A. Goldberg, M.D.; Senior Vice President, Clinical Research Services and Director Roland Andersson, Ph.D.; Senior Vice President, Chief Financial Officer, and Director Ingo Bank; Senior Vice President, General Counsel, Secretary, and Director Douglas A. Batt; Parexel Informatics President and Parexel Director Xavier Flinois; Senior Vice President, Clinical Research Services and Director Gadi Saarony; Senior Vice President, Chief Administrative Officer, and Director Ulf Schneider, Ph.D.; Senior Vice President, Clinical Research Services and Director Thomas Senderovitz, M.D.; Director A. Dana Callow, Jr.; Director Patrick J. Fortune, Ph.D.; Director Maykin Ho, Ph.D.; Director Eduard E. Holdener, M.D.; Director Christopher J. Lindop; Director Richard L. Love; and Director Ellen M. Zane.[2]  *Id.* ¶¶ 14-15.

Geary is a resident of San Jose, California.  *Id.* ¶ 13.  In February 2014, Parexel hired Geary to work from home as a Sr. Project Leader.  *Id.* ¶ 8.  In that role, Geary was responsible for calculating and reporting accrual of recognized revenue and attesting to accuracy of expenses prior to submitting them to clients for reimbursement.  *Id.* ¶ 11.

In August 2014, Geary was assigned to be the Sr. Project Leader for Parexel client Pharmacyclics, Inc. ("PCYC").  *Id.* ¶¶ 9, 19.  He says he was selected to "rescue a failing project" (the "PCYC Project").  *Id.* ¶ 19.  Upon assuming leadership of the PCYC Project, Geary "reported

---

[2] Parexel notes that only one of the Individual Defendants remains employed at or in service as a Director.  Mot. at 11 n.4.

Case No.:   5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
2

up the hierarchy that [the] PCYC Project had serious, pre-existing issues of controls related to revenue recognition and client approval of monthly invoices for payment." *Id.* Specifically, for the 18 months prior, PCYC had refused to authorize monthly invoices that Geary's immediate supervisor, Sr. Director Joy Yucaitis, had submitted to PCYC. *Id.* ¶ 20. PCYC demanded that Yucaitis be removed from the PCYC Project, leading to Geary's assignment. *Id.* ¶ 21. Geary says that as soon as he joined the PCYC Project, he began experiencing "pressure and pre-emptive retaliation to influence PCYC to authorized overstated invoices." *Id.* ¶ 23.

On November 5, 2014, Geary reported errors in Parexel's revenue recognition for the PCYC Project "due to a lack of internal controls in revenue recognition." *Id.* ¶ 24. Parexel subsequently reversed $162,000 in revenue recognition. *Id.* ¶ 25. Shortly thereafter, beginning in December 2014, Geary says that he "began receiving intense abuse, threats and coercion to 'use your credibility to influence with PCYC' representatives" to obtain PCYC's authorization for overstated monthly invoices. *Id.* ¶ 26. On January 29, 2015, Geary alleges that Yucaitis publicly verbally abused him at an off-site business meeting and ordered him to remove his clothing and don another man's clothing instead. *Id.* ¶ 28. On February 5, 2015, Geary was placed on a Performance Improvement Plan ("PIP") because he "had damaged his working relationship with the Parexel Finance department." *Id.* ¶ 29. The PIP stated, "Specifically, he must make progress in mending fences with finance." *Id.*

In March 2015, Geary was assigned to be the Sr. Project Leader for another Parexel client, GlaxoSmithKline ("GSK"), on the "GSK Project." *Id.* ¶¶ 30-31. Geary alleges that Parexel finance representatives directed him to "manufacture accrual and recognize" $400,000 in revenue for the GSK Project for the month of March, despite the fact that the GSK Project had been active for less than 30 days, no work had been started on the project, and no revenue had accrued. *Id.* ¶¶ 32-33. According to Geary, his supervisor "made it clear to him that he was 'expected to conform to revenue projections' and authorize the $400K revenue recognition." *Id.* ¶ 34. Despite being on a PIP and under a threat of termination, Geary refused to fabricate the revenue. *Id.* ¶¶ 34-35.

On April 9, 2015, Geary reported what he believes was wire fraud, investor fraud, and

Case No.: 5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
3

violations of the Physicians Payment Sunshine Act through the Parexel hierarchy. *Id.* ¶ 36. He believed that emailing manufactured financial reports to a client in order to obtain authorization for payment of invoices constituted wire fraud. *Id.* ¶ 37. Geary also believed that manufacturing revenue accrual constituted investor fraud. *Id.* ¶ 38.

On April 24, 2015, Parexel placed Geary on a leave of absence. *Id.* ¶ 49. Geary reported his observations to the Securities and Exchange Commission ("SEC") in May 2018. *Id.* ¶ 50. During May and June 2015, Geary says he was pressured to sign a non-disclosure agreement but refused. *Id.* ¶ 41. On June 30, 2015, Parexel terminated Geary's employment, which he believes was because he "refused to be complicit in wrongdoing." *Id.* ¶ 42.

On November 29, 2015, Geary filed a complaint describing alleged fraud, retaliation, malice, oppression, and racketeering at Parexel to the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA"). *Id.* ¶ 43. During this period, Parexel continued to pressure Geary to sign a non-disclosure agreement. *Id.* ¶ 44. On May 30, 2016, Geary says that "180 days elapsed without a determination by the Secretary of Labor" on his retaliation complaint. *Id.* ¶ 45.

A year later, on July 12, 2016, Parexel CFO and Defendant Bank resigned, three weeks prior to reporting final year-end corporate results. *Id.* ¶ 46. On August 30, 2016, Parexel filed a Notification of Late Filing for its Annual Report on Form 10-K for the year ending June 30, 2016. *Id.* ¶ 47. On September 9, 2016, Independent Registered Public Accounting Firm Ernst & Young LLP reported "material weaknesses in controls related to revenue recognition at its Clinical Research Services reporting segment and approval of invoices for payment" for fiscal years 2014, 2015, and 2016. *Id.* ¶ 48. Geary says that these facts are all consistent with and confirm the fraud that he had reported earlier. *Id.*

On October 24, 2018, OSHA informed Geary that it had completed its investigation of his complaint against Parexel and informed him that he had "30 days from the receipt of these Findings to file objections and to request a hearing before an Administrative Law Judge (ALJ). If no objections are filed, these Findings will become final and not subject to court review." Dkt.

Case No.: 5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
4

No. 122-1 at 1–2.[3]

Geary filed this action on November 7, 2019. Dkt. No. 1. Due to the COVID-19 pandemic, the U.S. Marshals were unable to serve process on Defendants as they would otherwise typically have done. *See* Dkt. No. 110. Defendants filed a waiver of service on April 28, 2021. Dkt. No. 118. This motion followed thereafter. Dkt. No. 122.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Rule 12(b)(1) motion. Fed. R. Civ. P. 12(b)(1). A defendant may challenge jurisdiction "facially" by arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting extrinsic evidence demonstrating the lack of jurisdiction on the facts of the case. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

In resolving a factual attack on jurisdiction, the Court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). While the Court may consider evidence outside of the pleadings to resolve a "factual" Rule 12(b)(1) motion, "a [j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the

---

[3] Defendants request the Court take judicial notice of the October 24, 2018 OSHA letter and preliminary findings regarding Geary's SOX complaint. Dkt. No. 122. Geary does not object to the request. *See* Resp. to Mot. to Dismiss ("Resp."), Dkt. No. 123. The Court grants Defendants' request and takes judicial notice of the facts as described above as an administrative record of a U.S. government agency. *See Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1001 (9th Cir. 2018) (citing *United States v. Ritchie*, 342 F.3d 903, 907–09 (9th Cir. 2003)); *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F. 3d 943, 955 (9th Cir. 2008).

Case No.: 5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
5

question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air for Everyone*, 373 F.3d at 1039 n.3 (citing *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 140 (9th Cir. 1983)) (internal quotation marks omitted).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Likewise, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank,*

Case No.: 5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
6

*N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).

### III. DISCUSSION

#### A. Sarbanes-Oxley Claim

"To safeguard investors in public companies and restore trust in the financial markets following the collapse of Enron Corporation, Congress enacted the Sarbanes-Oxley Act of 2002, 116 Stat. 745." *Lawson v. FMR LLC*, 571 U.S. 429, 432 (2014) (citing S. Rep. No. 107-146, pp. 2–11 (2002)). One of the measures enacted in Sarbanes-Oxley to achieve these goals was the protection of whistleblowers. *Id.* In particular, Sarbanes-Oxley provides that "no [publicly traded] company . . . or any officer, employee, contractor, subcontractor, or agent of such company" may retaliate against an employee for "provid[ing] information, caus[ing] information to be provided, or otherwise assist[ing] in an investigation" of conduct that the employee reasonably believes is a violation of securities law or the SEC's rules where "the information or assistance is provided to or the investigation is conducted by," among others, "a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)." 18 U.S.C. § 1514A(a)(1)(C).

Under Sarbanes-Oxley, an aggrieved whistleblower can initiate an administrative action by filing a complaint with the Secretary of Labor, which must be filed "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." *Id.* § 1514A(b)(1)(A), (2)(D). In addition, "if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant," the claimant make bring an action seeking de novo review in federal district court. *Id.* § 1514A(b)(1)(B).

Any administrative action brought under § 1514A(b)(1)(A) is governed by the rules and procedures set out in 49 U.S.C. § 41212(b). *Id.* § 1514A(b)(2)(A). Section 41212(b) states in relevant part:

> Not later than 60 days after the date of receipt of a complaint . . . the

Case No.: 5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
7

> Secretary of Labor shall conduct an investigation and determine whether there is reasonable cause to believe that the complaint has merit and notify, in writing, the complainant and the person alleged to have committed a violation . . . of the Secretary's findings.

The Secretary may also include a preliminary order based on the findings.[4] 49 U.S.C. § 41212(b). Within 30 days of notification of the findings, either party can appeal the findings or preliminary order by "fil[ing] objections to the findings or preliminary order, or both, and request[ing] a hearing on the record." 49 U.S.C. § 41212(b)(2)(A); *see also* 29 C.F.R. § 1980.106(a). If no party requests a hearing within the 30-day period, "the preliminary order shall be deemed a final order that is not subject to judicial review." 49 U.S.C. § 41212(b)(2)(A); *see also* 29 C.F.R. § 1980.106(a) ("If no timely objection is filed with respect to either the findings or preliminary order, the findings and/or preliminary order will become the final decision of the Secretary, not subject to judicial review.").

Defendants contend that Geary did not file a timely objection to the Secretary's preliminary findings or request a hearing before an ALJ. Mot. at 6–8. Defendants say that the preliminary findings thus became a final order that is not subject to judicial review, and therefore the Court should dismiss Geary's Sarbanes-Oxley claim with prejudice because of his failure to exhaust administrative remedies.

In his response, Geary does not dispute that he failed to submit objections or request a hearing from an ALJ by the 30-day deadline. Instead, he argues that his claim may proceed under 18 U.S.C. § 1514A(b)(1)(B) because 180 days lapsed without a final decision from the Secretary, and that delay was not due to any bad faith on Geary's part. Resp. at 2. Geary does not address the requirements of 49 U.S.C. § 41212 or any of the regulations described above.

The Southern District of New York's decision in *Lebron v. American International Group, Inc.* is instructive. No. 09 Civ. 4285(SAS), 2009 WL 3364039 (S.D.N.Y. Oct. 19, 2009). There, the Sarbanes-Oxley whistleblower plaintiff filed her complaint with OSHA, which issued

---

[4] Under the administrative regulations promulgated by the Department of Labor, the Secretary may delegate these duties to the Assistant Secretary. *See* 29 C.F.R. §§ 1980.104, 1980.105.

Case No.: 5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
8

preliminary findings. However, the plaintiff did not send a copy of her objections and request for a hearing to the ALJ as required, and she took no other steps to appeal the preliminary findings and order. *Id.* at *2. The Southern District of New York considered the question of whether preliminary findings and orders that are not appealed within 30 days become final and not subject to judicial review if the Secretary failed to issue a final order within 180 days of the filing of the complaint. *Id.* at *5–6. The *Lebron* court concluded that

> section 42121(b)'s prohibition on judicial review of final orders must be read as a limit on Congress's grant of jurisdiction to the district courts under section 1514A. Under this reading, if the Secretary does not issue a final order within 180 days of the filing of the administrative complaint, the complainant has thirty days from receiving a preliminary order to either file a claim in a district court or appeal the preliminary order to the ALJ and thereby preserve the option to file a district court claim at a later time. If the complainant, like Lebron, takes no action within thirty days, the preliminary order becomes final and the district court no longer has jurisdiction to review the claims *de novo*.

*Id.* at *6. The material facts of *Lebron* are indistinguishable from Geary's situation: he did not act on the preliminary findings and order within the 30-day time limit, and the preliminary order became final and unreviewable. Geary does not address *Lebron* in his opposition.

Geary asserts that "the Defendants[] made glaring misrepresentations during OSHA's investigation" that "functionally interfered with the investigation at OSHA and is retaliatory." Resp. at 7. He provides no details on what those purported misrepresentations consisted of. Regardless, the substantive findings resulting from the OSHA investigation are not the key issue here on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. What is of significance is that Geary did not timely object to OSHA's preliminary findings and seek a hearing before the ALJ, and that inaction is fatal to his claim now.

Accordingly, the Court finds that it lacks subject matter jurisdiction over Geary's Sarbanes-Oxley claim and must dismiss it with prejudice, as leave to amend would be futile.

**B.   Dodd-Frank Claim**

In 2010, Congress established a new whistleblower protection scheme under the Dodd-Frank Act. *See* 15 U.S.C. § 78u-6. Dodd-Frank defines a "whistleblower" as "any individual who

provides . . . information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." *Id.* § 78u-6(a)(6). Dodd-Frank's anti-retaliation provision forbids an "employer" from retaliating against a whistleblower not only for "providing information to the Commission" or "initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information" but also for "making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. [§§] 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission." *Id.* § 78u–6(h)(1)(A)(i)-(iii). Unlike Sarbanes-Oxley, Dodd-Frank does not require a whistleblower to exhaust administrative remedies before bringing suit in federal court. *Wadler v. Bio-Rad Labs., Inc.*, 141 F. Supp. 3d 1005, 1015 (N.D. Cal. 2015). The statute of limitations for bringing a Dodd-Frank retaliation claim is six to ten years. *Id.*; 15 U.S.C. § 78u-6(h)(1)(iii).

The Supreme Court has held that an employee who does not provide information to the SEC before termination does not qualify as a "whistleblower" at the time of the alleged retaliation and is therefore ineligible for relief under § 78u-6(h). *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 778 (2018). Defendants argue that Geary alleges that he did not report any alleged wrongdoing to the SEC until May 2018—three years after his termination. Mot. at 9; *see* Compl. ¶¶ 1, 40. Thus, Defendants contend that his SEC report could not possibly have served as the basis for his termination.

Geary acknowledges that his complaint pleads a report to the SEC in May 2018 but asserts that this was a typographical error and that he actually reported to the SEC in May 2015. Resp. at 1, 3. He seeks leave to amend to correct that error. *Id.* at 1. Based on the timeline of allegations surrounding the erroneous reference to May 2018, the Court accepts Geary's representation. *See* Compl. ¶¶ 39-42 (discussing events occurring between April 24, 2015 to June 30, 2015). The Court dismisses the Dodd-Frank claim based on the complaint as currently pled, but grants Geary leave to amend to correct the typographical errors.

Case No.: 5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
10

### C. Wrongful Termination Claims

Defendants contend that Geary's state law claims for wrongful termination in violation of California Labor Code § 1102.5 and common law wrongful termination in violation of public policy are time-barred. Mot. at 10. A claim for wrongful termination in violation of public policy has a limitations period of two years. *King v. Praxair Distr., Inc.*, No. 3:20-cv-07817-JD, 2021 WL 3847906, at *2 (N.D. Cal. Aug. 27, 2021) (citing Cal. Civ. Proc. Code § 335.1; *Mathieu v. Norrell Corp.*, 115 Cal. App. 4th 1174, 1189 & n.14 (2004)); *see also Prue v. Brady Co./San Diego*, 242 Cal. App. 4th 1367, 1382 (2015). "Section 1102.5 does not provide its own statute of limitations." *Khan v. SAP Labs, LLC*, No. 18-CV-07490-BLF, 2019 WL 5697928, at *13 (N.D. Cal. Nov. 4, 2019) (internal quotation marks and citation omitted). California courts and federal district courts are split on whether a three-year limitations period or a one-year period applies. *Id.* Here, Defendants argue that a three-year period applies, and the Court joins other courts within this District and within the Ninth Circuit in applying a three-year period. *Id.* (citing cases); *Braz v. Delta Air Lines, Inc.*, No. 18-CV-06162-JST, 2019 WL 202817, at *3 (N.D. Cal. Jan. 15, 2019) Mot. at 10.

Wrongful termination claims accrue no later than the date of the allegedly retaliatory termination. *Braz*, 2019 WL 202817, at *3 (N.D. Cal. Jan. 15, 2019) (section 1102.5 claim); *Goel v. Shah*, No. C 13-3586 SBA, 2014 WL 460867, at *3 (N.D. Cal. Feb. 3, 2014) (wrongful termination in violation of public policy) (citing *Romano v. Rockwell Int'l*, 14 Cal. 4th 479, 501 (1996)). Accordingly, Geary's wrongful termination claims accrued on June 30, 2015 when Parexel terminated his employment. Compl. ¶ 42. He was therefore required to file his wrongful termination claims by June 30, 2017 and June 30, 2018, but he did not do so until November 7, 2019. Accordingly, these claims are time-barred.

Geary argues that he "memorialized a federal action by submitting his complaint to OSHA on 30 Nov 2015, as required by the statute, the case has been pending since that time." Resp. at 14. He cites the Supreme Court's decision in *Artis v. Dist. of Columbia*, 138 S. Ct. 594 (2018) for the proposition that "once a federal action is filed, state law statutes of limitations are tolled and,

Case No.: 5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
11

1  unless state law provides for a longer tolling period, do not restart until thirty (30) days after the
2  district court's dismissal of the federal claims." Resp. at 13–14. Even if that were a correct
3  reading of *Artis*, the submission of Geary's complaint to OSHA in 2015 is not the equivalent of
4  filing a lawsuit in federal court. Sarbanes-Oxley's statutory and regulatory language make the
5  distinction quite clear. *See supra* Section III.A.
6        Accordingly, the Court dismisses both wrongful termination claims without leave to
7  amend because amendment would be futile.

### D. Claims Against Individual Defendants

Defendants further argue that Geary's claims against the Individual Defendants cannot proceed because Geary has failed to adequately state a claim against them or because the law does not provide for individual liability. Mot. at 10–12. Because the Court dismisses the Sarbanes-Oxley and wrongful termination claims without leave to amend, it addresses only the Dodd-Frank claim here.

Directors may be held individually liable for retaliation under Dodd-Frank. *Wadler*, 141 F. Supp. 3d at 1022–24. Defendants' Rule 12(b)(6) motion is based solely on the lack of facts tying any Individual Defendant to Geary's termination; Defendants do not otherwise contend that the complaint lacks facts supporting all other elements of a claim against Parexel under 15 U.S.C. § 78u-6(h)(1)(A). Mot. at 11. Geary agrees that directors may be held individually liable under Sarbanes-Oxley, but he does not address Dodd-Frank or respond to Defendants' argument regarding insufficient pleading of facts as to the Individual Defendants. *See* Resp. at 3.

The parties do not cite and the Court was unable to find any court decisions addressing Rule 12(b)(6) pleading requirements against individual defendants under Dodd-Frank. Regardless, the complaint does not allege any specific knowledge of or involvement by any of the Individual Defendants in Geary's allegedly retaliatory termination. The most Geary pleads is that he reported what he believed was fraud "up the corporate hierarchy." Compl. ¶¶ 1, 36. He does not explain to whom he reported his observations, much less that any of the Individual Defendants were aware of his reports and played a role in the decision to terminate his employment. *Iqbal*,

Case No.: 5:19-cv-07322-EJD
ORDER GRANTING MOT. TO DISMISS W/ LEAVE TO AMEND
12

556 U.S. at 678 (requiring a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (internal quotation marks omitted)).

Accordingly, the Court grants the motion to dismiss the Dodd-Frank claim against the Individual Defendants. Geary may amend to add specific allegations regarding each Individual Defendant's knowledge and role in his termination.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss, with limited leave to amend only the Dodd-Frank Act claim to address the deficiencies described above. Geary shall file an amended complaint by **April 8, 2022**.

The Court encourages Geary to seek out the assistance of the Federal Pro Se Program, which offers free legal information for pro se litigants. While the Program does not provide legal representation, a licensed attorney may assist Geary with aspects of his case, such as amending his complaint. The Program's phone number is (408) 297-1480. More information on the Program is available on the Court's website at https://cand.uscourts.gov/helpcentersj.

Geary may also wish to consult a manual the Court has adopted to assist pro se litigants in presenting their case. An online version of the manual, as well as other free information for pro se litigants, is available on the Court's website at https://cand.uscourts.gov/pro-se.

**IT IS SO ORDERED.**

Dated: March 18, 2022

EDWARD J. DAVILA
United States District Judge